IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| LAURA E. HOLDELL,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of the Social<br>Security Administration,<br><br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§    Civil Action No. 7:17-cv-00038-O-BP<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES
MAGISTRATE JUDGE AND NOTICE AND ORDER**

Plaintiff Laura E. Holdell ("Holdell") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits ("DIB") under Title XVI of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

**FINDINGS AND CONCLUSIONS**

**I.     STATEMENT OF THE CASE**

Holdell received Social Security disability benefits as a minor, with diagnoses of "speech and language delays" and "deafness." Tr. 53. Her disability began on February 1, 1998. *Id.* When Holdell reached the age of 18, her eligibility for those benefits was redetermined under the rules for adult disability, and the Commissioner determined that she was no longer disabled as of February 1, 2013. Tr. 10, 54. Her benefits ceased on February 20, 2013. Tr. 54. The Commissioner

upheld her decision upon reconsideration after a disability hearing. Tr. 1, 77–79. On October 29, 2013, Holdell responded with a request for a hearing. Tr. 80. On February 5, 2015, Administrative Law Judge ("ALJ") Larry D. Shepherd held a hearing at which Holdell and an impartial vocational expert ("VE") testified. Tr. 10, 24–52. At the hearing, Holdell was represented by counsel and had the aid of hearing-impaired interpreters. Tr. 10. The ALJ issued his decision on July 31, 2015, and found that Holdell was not disabled. Tr. 10–17.

In his decision, the ALJ employed the statutory five-step analysis. The ALJ first noted that Holdell was no longer disabled as of February 1, 2013, based on a redetermination of disability under the rules for adults who file new applications. Tr. 12, Finding 1. Step one of the usual analysis does not apply to Holdell, as it is not used for redetermining disability at age 18. 20 C.F.R. 416.987(b); Tr. 11. At step two, the ALJ found that Holdell had severe impairments of bilateral hearing loss with profound sensorineural hearing loss in the left ear and moderate-to-severe sensorineural hearing loss in the right ear. Tr. 12, Finding 2. At step three, the ALJ found that Holdell's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. 404(P)(1). Tr. 13, Finding 3. In particular, the ALJ determined that Holdell had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations: she was to avoid concentrated exposure to extreme heat, wetness, humidity, very loud noises, and hazards, such as unprotected heights and heavy machinery. Tr. 13, Finding 4. The ALJ also ruled that Holdell could only perform work where oral communication is not an essential job function. *Id.* At step four, the ALJ found that Holdell had no past relevant work. Tr. 15, Finding 5. At step five, the ALJ found that she was capable of performing jobs that exist in significant numbers in the national economy. Tr. 15, Finding 9. The ALJ cited representative professions from the Dictionary of Occupational Titles ("DOT"), taken

from the VE's testimony, that could be performed: Electronics Worker, Riveting Machine Operator II, and Wire Stripper. *Id.* As a result of the five-step analysis, the ALJ found that Holdell's disability ended on February 1, 2013, and she had not become disabled again since that date. Tr. 16, Finding 10.

The Appeals Council denied Holdell's request for review on February 1, 2017. Tr. 1–5. Therefore the ALJ's decision became the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of a request for review.").

## II.   FACTUAL BACKGROUND

Holdell was born on November 9, 1994. Tr. 53. She reached age 18 on November 9, 2012. She was 20 years old at the time of the hearing on February 5, 2015. She has a high school education and no past work experience. Tr. 36.

## III.   STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.* of the SSA controls the disability insurance program as well as numerous regulatory provisions concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). For step one, the claimant must not be presently working at any substantial gainful activity to gain disability benefits. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work

activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572; *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). For step two, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). For step three, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing") found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Before proceeding to step four, the Commissioner must assess the claimant's RFC—"the most the claimant can still do despite [her] physical and mental limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). For step four, if the claimant's medical status alone does not constitute a disability, the impairment must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). For step five, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). "The claimant bears the burden of showing that she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). "If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley*, 197 F.3d at 198.)

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It

is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV.   ANALYSIS

Holdell raises one issue on appeal. She argues that the VE's testimony during her hearing, on which the ALJ relied in his decision, did not constitute evidence sufficient to meet the Commissioner's burden of proof at step five of the sequential evaluation process. ECF No. 14 at 7. Step five requires the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Audler*, 501 F.3d at 448. Holdell does not take issue with the ALJ's findings at the other steps, including his findings concerning her medical condition and her RFC. ECF No. 14 at 2. Holdell only challenges whether the ALJ had substantial evidence for his adverse finding at step five.

In particular, Holdell contends that the VE's testimony leads to the conclusion that she cannot perform the jobs listed by the ALJ in his decision, as they would require a special training or orientation period after hiring due to her hearing impairment. ECF No. 14 at 8. However, the VE's testimony does not seem to lead to any such conclusion, nor does Holdell cite any legal authority for the proposition that the requirement of a special training period for a job would establish an inability to perform that job. Moreover, as the Commissioner points out, the

Regulations allow for some on-the-job training for all types of work, even unskilled work. 20 C.F.R. § 416.968.

The VE provided the ALJ with sufficient support for his decision that there exists substantial work in the national economy that the Holdell can perform. When questioning the VE, the ALJ first gave a hypothetical description of a worker that fit Holdell's characteristics and asked whether there would be jobs available to such a worker. Tr. 45–46. The VE responded that there would, and he offered three examples from the DOT that exist in sufficient numbers in the state and national economy: Electronics Worker, Riveting Machine Operator II, and Wire Stripper. Tr. 46–47. In addition, when the ALJ subsequently brought up the job of hotel housekeeper, the VE testified that "a plethora of individuals doing that job . . . don't have a good communication skill," and that those, presumably referring to his earlier three job suggestions, "are just specific ones that could be routinely done with limited or basically no auditory abilities because you could see what's being done." Tr. 48. "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Carey*, 230 F.3d at 145 (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). Noting that the VE's testimony was consistent with the DOT, the ALJ cited the statements of the VE that Holdell could perform three representative jobs in his decision at step five. Tr. 16.

The VE also made less clear statements that could support a finding of disability status at step five, statements that concerned special assistance or training on the job. The ALJ asked the VE whether it would be reasonable for an employer to provide written instructions to a hearing-impaired employee, to which the VE responded that "it's not customarily performed in that manner." Tr. 47. Holdell's attorney returned to these concerns when examining the VE. The attorney asked whether a person who could communicate only through sign language or writing

would be able to work without accommodation, to which the VE responded that these jobs would require accommodations such as written instructions. Tr. 50–52. More importantly, however, the VE confirmed his earlier testimony that, although these accommodations are not customarily made, they don't provide "much difficulty with these jobs." Tr. 51–52. At no point does the VE recant his earlier testimony that someone in Holdell's position could not perform the jobs he listed, nor do any of these remarks clearly support a finding of disability status in any way that would constitute a lack of substantial evidence.

Holdell points out that the ALJ's decision "reflects no consideration of the VE's remarks [on these concerns]. This may or may not constitute an independent ground of error." ECF No. 14 at 9. However, Holdell does not detail what that independent ground of error is, and the Court is aware of no authority that requires the ALJ to consider every part of a VE's remarks. The ALJ is only required to make his decision based whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett*, 67 F.3d at 564.

Holdell's argument is essentially that the ALJ should have given no weight to those statements by the VE that were adverse to disability status and instead should have concentrated on those statements by the VE that might have supported disability status. However, such a weighing of the evidence is the prerogative of the ALJ. The job of the Court is not to re-weigh the evidence, but only to scrutinize the record to determine if substantial evidence is present. *Hollis*, 837 F.2d at 1383; *Harris*, 209 F.3d at 417. The Court is not allowed to substitute its own judgment for that of the ALJ or even testifying witnesses such as the VE. *Carey*, 230 F.3d at 146. The VE clearly stated that a person in Holdell's situation could perform in a number of occupations, and the ALJ explicitly cited that evidence in his decision at step five. Thus there is substantial evidence in the record to support the ALJ's decision at step five.

## V.     CONCLUSION

The ALJ followed the correct legal standards in reaching his conclusion, and substantial evidence in the record supports the ALJ's determination, based on the VE's testimony, that Holdell was not disabled.

## RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that Judge O'Connor AFFIRM the Commissioner's decision.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **November 2, 2017** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed

and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

Signed October 19, 2017.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE